### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MCLANE COMPANY, INC., *Plaintiff*, v. H&H INSULATION, LLC and JASON HOWARD, *Defendants* | Case No. 24-cv-3129-ABA |

### MEMORANDUM OPINION

Plaintiff McLane Company, Inc. filed this suit against Defendants H&H Insulation, LLC and Jason Howard alleging breach of contract, unjust enrichment, conversion, negligent misrepresentation, and fraud arising out of Defendants' alleged failure to perform under a construction contract with McLane. ECF No. 1. Defendants did not enter an appearance, respond to the complaint, or challenge the Clerk of Court's entries of default, which occurred on February 6, 2025 for Mr. Howard and on March 5, 2025 for H&H Insulation. ECF Nos. 18 & 23. Thereafter, McLane filed the pending motion for default judgment. ECF No. 28. Defendants also did not respond to the motion for default judgment. For the following reasons, the Court will grant the motion.

Federal Rule of Civil Procedure 55 provides that "[w]hen a party . . . has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After entry of default and upon a plaintiff's motion, the court may enter a default judgment against the defendant. Fed. R. Civ. P. 55(b)(2). In considering a motion for default judgment, this Court accepts as true any well-pled factual allegations in the complaint regarding liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001). Default judgment

"is appropriate when the adversary process has been halted because of an essentially unresponsive party." *Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting Co.*, 919 F. Supp. 2d 680, 684 (D. Md. 2013) (quoting *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005)). After a plaintiff establishes liability, "the court must make an independent determination regarding damages and cannot accept as true factual allegations of damages." *Id*. "While the court may conduct an evidentiary hearing to determine damages, it is not required to do so; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum." *Id*. (citing *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794–95 (D. Md. 2010) (listing cases)).

Regarding liability, McLane alleges that in early 2023, the parties entered into a contract for H&H Insulation to repair the roof and install piping insulation at McLane's New Jersey distribution center. ECF No. 1 ¶¶ 9, 14. McLane made an initial payment of $250,000 to Defendants under the contract. *Id*. ¶¶ 13-15; *see* ECF No. 1-3 (the $250,000 invoice). McLane alleges that Defendants agreed to start the work on September 5, 2023, but that Defendants did not appear on that date. ECF No. 1 ¶¶ 16–17.

McLane further alleges that on December 20, 2023, "Mr. Howard apologized for the delay in work and indicated H&H would be at the Project Site on January 15, 2024," which he later changed to January 18, 2024. *Id*. ¶¶ 18–19. But H&H Insulation did not arrive at the project site on January 18, 2024. *Id*. ¶ 20. McLane alleges that it then requested status updates on April 30, 2024 and May 7, 2024. *Id*. ¶¶ 23–24. McLane alleges that, in response, Mr. Howard stated that they would start on June 3, 2024. *Id*. ¶ 24. McLane further alleges that employees of H&H Insulation did arrive on June 3 and worked through June 4, during which time H&H Insulation removed "the existing

2

insulation for the hot pipes," and left the refrigeration pipes exposed, "creating risk of ammonia gas exposure if not promptly addressed." *Id.* ¶¶ 25–28.

McLane alleges that H&H Insulation never returned after June 4. *Id.* ¶ 29. McLane asserts that in response to requests for additional updates, Mr. Howard "explicitly accept[ed] full responsibility for not completing the Project, and made attempts to justify his reasoning as to why the Project remained uncompleted." *Id.* ¶ 33; *see* ECF No. 1-5 (email from Mr. Howard to McLane). McLane further alleges that it "discovered H&H's business registration was revoked" and it could not "legally operate or conduct business . . . until it resolve[d] its business issue(s)." ECF No. 1 ¶ 34.

As a result, McLane alleges that "Defendants have materially and unreasonably delayed the completion of the Project," "removed existing piping material exposing employees to ammonia gas, and failed to deliver or install the piping materials called for in the Agreement." *Id.* ¶ 2. Taking these allegations as true, McLane has established liability.

Regarding damages, McLane seeks the return of the $250,000 paid to Defendants, interest thereon, and attorney fees and costs of $8,817.78. McLane has adequately established the $250,000 loss by providing the invoice and the check number. *See* ECF No. 1-3 (invoice); ECF No. 28-9 ¶ 6 (affidavit of Walter Brunhammer stating that "Plaintiff remitted payment of $250,000 (check# 1000766840) to H&H which was tendered by H&H on or about May 12, 2023"). Although Defendants did perform some work, they did not start the actual construction bargained for and their work left the roof piping vulnerable. Thus, accepting McLane's allegations as true (as the Court must do for default judgment purposes), the Court concludes that McLane is entitled to recover the entire loss of $250,000. Moreover, interest is compensable and

shall be calculated under section 1961. 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court" and is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment").

The parties' contract also provided for attorneys' fees if McLane "recover[ed] a judgment against" Defendants. ECF No. 1-4 ¶¶ 8 & 15. Attorneys' fees are calculated using the lodestar method, which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In deciding whether the number of hours spent and the rate are reasonable, courts consider these twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009) (quoting *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978)).

The Court has reviewed McLane's legal invoices showing a total of $8,087.00 in fees and $730.78 in costs, and showing hourly rates from $150 for paralegals and $300 to $425 for attorneys. ECF No. 28-5—28-7. The Court has also reviewed the hours spent

on the case. *Id*. Considering the factors listed above, the documentation provided by McLane, and the "Guidelines Regarding Hourly Rates" in Appendix B of the Local Rules, the Court concludes that the time spent and the rates applied are reasonable.

As a result, the Court will grant McLane's motion for default judgment and award them $250,000 plus interest and $8,817.78 in attorneys' fees and costs.

A separate order follows.


Date:  December 16, 2025                     _____/s/_____
                                              Adam B. Abelson
                                              United States District Judge